**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Sunrise International Leasing Corporation, as Assignee of Sun Microsystems Finance

Plaintiff,

v.

MegsInet, Inc., n/k/a MegsInet Internet, Inc. an Illinois corporation,

Defendant.

Civil No. 01-2261 DWF/AJB

**REPORT & RECOMMENDATION ON MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION**

---

The above-entitled matter came before the Honorable Arthur J. Boylan, Magistrate Judge of the United States District Court, District of Minnesota, in Room 638, U.S. Courthouse, 316 N. Robert Street, St. Paul, Minnesota, 55101, on February 26, 2002, for a hearing on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Docket 5]. David K. Nightingale, Esq. represented Plaintiff. Stephen M. Harris, Esq. represented Defendant. The matter has been referred to the Magistrate Judge for Report and Recommendation under 28 U.S.C. § 636(b)(1).

**MEMORANDUM**

In this breach of lease dispute, Defendant MegsInet Internet, Inc. (MegsInet) brought a motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2). Plaintiff Sunrise International Leasing Corp. (Sunrise) opposes the motion and argues that the Court has



MAR 18 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

personal jurisdiction over MegsInet due to MegsInet's contacts with Minnesota, and as a result of the relationship between MegsInet, Minnesota, and this litigation.

Sunrise, doing business under its assumed name of Sun Microsystems Finance, is a registered Minnesota corporation with its principal place of business in Golden Valley, Minnesota. Sunrise provides financing to its customers for the lease of computer equipment from Sun Microsystems. MegsInet Internet, Inc. f/k/a MegsInet, Inc. (MegsInet) is an Illinois corporation with its current principal place of business in East Lansing, Michigan. MegsInet is not registered to do business in Minnesota, maintains no place of business in Minnesota, has no employees in Minnesota, and owns no property in Minnesota.

In October 1998, MegsInet contacted Sunrise to obtain a price quote for the lease of computer equipment. Sunrise responded by faxing a quotation to MegsInet on October 6, 1998. On October 9, 1998, Sunrise faxed a Master Lease Agreement to MegsInet for execution. MegsInet again contacted Sunrise on November 16, 1998, by fax message regarding a partial shipment of the leased equipment. Sunrise, per MegsInet's partial shipment request, faxed MegsInet again on December 21, 1998, to indicate a change in terms due to the partial shipment. On December 24, 1998, Sunrise and MegsInet entered into Master Lease Agreement No. SL3075 (Master Lease). The Master Lease's merger clause indicates that the entire agreement was to consist of the Master Lease and any subsequent Schedules. [Verified Complaint at Ex. 1 ¶ 16].[1] The Master Lease's choice of law clause provides that California law shall govern the Master Lease and any Schedules. [Verified Complaint at Ex. 1 ¶ 15]. However, neither the Master Lease

---

[1] Docket No. 1.

nor any subsequent Schedule contains a forum selection clause.

Pursuant to the Master Lease and a supplementary Lease Schedule, Sunrise arranged for the shipment of leased equipment to MegsInet from California. Thereafter, MegsInet remitted its lease payments to Sunrise in Massachusetts. Contact between MegsInet and Sunrise existed throughout the initial three years of the lease term. MegsInet's seemingly final contact with Sunrise was on August 9, 2001, when MegsInet's successor in interest CoreComm contacted Sunrise regarding its lease options. It is alleged that MegsInet defaulted on its obligations to Sunrise by failing to make payments due under the Master Lease and Schedules. Sunrise brought suit in Minnesota State District Court in Hennepin County on November 14, 2001. MegsInet removed Sunrise's action to U.S. District Court, District of Minnesota, on December 7, 2001. MegsInet now moves for dismissal based on lack of personal jurisdiction.

**Minnesota's Long Arm Statute**

Minnesota's long-arm statute provides a forum for Minnesota residents injured by the acts or inactions of nonresidents. *See* MINN. STAT. ANN. § 543.19 (West 2000). The long-arm statute is applied to the fullest extent permitted under the due process clause of the Fourteenth Amendment. Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 410-11 (Minn.1992). That is, if the constitutional requirements for personal jurisdiction are met then the requirements of Minnesota's long-arm statute will be met. Id. at 411.

**Specific Jurisdiction**

Specific jurisdiction exists when the cause of action arises out of or is related to the defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n.8 (1984). Specific jurisdiction can arise from a single contact with the forum if the cause of action arose out of that contact. *See* McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); Marquette Nat'l Bank v. Norris, 270 N.W.2d 290, 295 (Minn.1978).

Although it is true that a single contractual relationship may furnish a basis for jurisdiction, *see* Burger King, Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184 n.18; McGee, 355 U.S. at 223, 78 S.Ct. at 201, courts have expressly denied that a resident's contract/lease with a nonresident party can alone automatically establish sufficient minimum contacts. Burger King, 471 U.S. at 478, 105 S.Ct. at 2185. It is essential that the contract relied upon have a "substantial connection" with the forum state. McGee, 355 U.S. at 223, 78 S.Ct. at 201. The factors considered in determining whether the defendant purposefully established minimum contacts with the forum include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King, 471 U.S. at 479, 105 S.Ct. at 2185.

**Due Process & Minimum Contacts**

It is fundamental that due process requires sufficient minimum contacts between a nonresident defendant and the forum state so that a court's exercise of jurisdiction "comports

with traditional notions of fair play and substantial justice." Int'l Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1954). Sufficient minimum contacts exist when "the defendant's conduct and connection with the forum state are such that it should reasonably anticipate being hailed into court there." World-wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980).

When evaluating the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Northwest Airlines, Inc. v. Astraea Aviation Serv., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958)). Moreover, jurisdiction is proper where the contacts proximately result from actions by the defendant itself that create a "substantial connection" with the forum state. Burger King, 471 U.S. at 475, 105 S.Ct. at 2183.

**Five Factor Test**

In concert with the fundamental principles of Due Process, this Court applies a five-factor test to determine whether minimum contacts exist. This five-factor test requires the court to evaluate: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Digi-Tel Holdings, Inc. v. Proteq Comm., Ltd., 89 F.3d 519, 522-23 (8th Cir. 1996) (citation omitted). However, a hierarchy exists within this test such that the first three factors are of

primary importance, while the latter two require less consideration. Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995). This test, in other words, is whether a defendant has established enough contacts with Minnesota to justify being sued here, and whether those contacts were established with the purpose of conducting business within Minnesota. Real Properties, Inc. v. Mission Ins. Co., 427 N.W.2d 665, 668 (Minn. 1988).

***1. Nature and Quality of Contacts***[2]

The parties argue over the importance of the "buyer-seller distinction" (here lessee-lessor). *See* discussion in Kreisler Mfg. Corp. v. Homstad Goldsmith, Inc., 322 N.W.2d 567, 572-73 (Minn. 1982). It is settled that only one due process standard, the requirement of "minimum contacts," applies to all defendants. Northern States Pump & Supply Co. v. Baumann, 311 Minn. 368, 371, 249 N.W.2d 182, 185 (1976).

Clearly, MegsInet was the lessee and Sunrise was the lessor in this transaction. Lessee status, however, will not protect the aggressor in a transaction from a court's exercise of jurisdiction. *See* Dent-Air, Inc. v. Beech Mountain Air Serv., 332 N.W.2d 904, 907 (Minn. 1983). Nonetheless, a potential buyer's mere inquiry will not sustain a finding of jurisdiction, id. at 908, because a potential buyer/lessee does not become an aggressor in a transaction by mere inquiry. TRWL Fin. Establishment v. Select Int'l, Inc., 527 N.W.2d 573, 577 (Minn. Ct. App. 1995) (citing Dent-Air, 332 N.W.2d at 908). In the cases where Minnesota courts

---

[2] In a recent unpublished opinion, the Minnesota Court of Appeals addressed nearly identical personal jurisdiction issues. *See* Sunrise Int'l Leasing Corp. v. ObjectSpace, Inc., C8-01-1380, 2002 WL 233848 (Minn. Ct. App. 2002). The Minnesota Court of Appeals held that respondent's contacts with the state of Minnesota were insufficient to support jurisdiction. Id. at *4 ("[W]e conclude that ObjectSpace's contacts with Minnesota were insufficient in quantity and quality to satisfy due process and to allow Minnesota to exercise in personam jurisdiction.").

exercised personal jurisdiction over nonresidents, the nonresidents initiated contacts with the Minnesota resident and took some action to induce the residents to enter into the transaction. *See, e.g.*, Marquette, 270 N.W.2d at 296; Trident Enter. Int'l Inc., v. Kemp & George, Inc., 502 N.W.2d 411, 415-16 (Minn. Ct. App. 1993) .

In October 1998, MegsInet contacted Sunrise to obtain a lease quotation for the lease of equipment. Sunrise, thereafter, provided MegsInet with a faxed copy of lease quotation on October 6, 1998. On October 9, 1998, Sunrise faxed the Master Lease to MegsInet for execution. MegsInet, on November 16, 1998, sent fax correspondence regarding a partial shipment of the leased equipment. Sunrise, per MegsInet's partial shipment request, faxed MegsInet again on December 21, 1998, to indicate its change in terms due to the partial shipment.

Sunrise is correct in stating that telephone calls, facsimiles and any mail correspondence between MegsInet and Sunrise were directed to Sunrise in Minnesota. The Court concludes, however, that Sunrise was the aggressor in this transaction. MegsInet's contact with Sunrise in October 1998, was merely an inquiry about leasing equipment. Sunrise, on October 6, 1998, provided MegsInet with a lease quotation by facsimile. This lease quotation fax states that Sunrise approved MegsInet's credit, and that Sunrise was awaiting MegsInet's acceptance of the price quote. Sunrise then altered the lease quote, on December 21, 1998, to provide MegsInet with the alternative of partial shipment of the leased equipment. Although MegsInet requested the partial shipment and agreed to pay for the equipment shipped, Sunrise modified its terms, in its overall effort to induce MegsInet into the lease agreement.

### *2. Quantity of Contacts*

MegsInet entered into a contract with Sunrise in December 1998, and this business relationship continued until MegsInet allegedly defaulted on its obligations to Sunrise. During this three-year relationship MegsInet contacts with Minnesota were primarily via telephone, and facsimile. MegsInet's additional contacts regarding the Master Lease were to Massachusetts (remitting lease payments to Boston) and California (receipt of equipment from Sun Microsystems in California). The types of contacts (telephone, mail, and facsimile) MegsInet had with Minnesota have been held to be insufficient to afford personal jurisdiction under Minnesota's long-arm statute. *See, e.g.* Mountaire Feeds, Inc. v. Agro Impex S.A., 677 F.2d 651, 652 (8th Cir. 1982); Dent-Air, 332 N.W.2d at 908; TRWL, 527 N.W.2d at 576 n.1.

### *3. Source and Connection of MegsInet Contacts with Minnesota*

As set forth above, a distinction exists between nonresident buyers and nonresident sellers of goods and services. The primary focus must be on the nonresident's contacts with the forum state, not the resident's interest in having the case decided in its home state. Astraea Aviation, 111 F.3d at 1390-91. Thus, it is necessary to consider the relationship between MegsInet's contacts with Minnesota and the cause of action.

Sunrise argues that the court has specific jurisdiction over MegsInet due to MegsInet's contacts with Minnesota, and the relationship between MegsInet, Minnesota and this litigation. *See* Minn. Mining & Mfg., 63 F.3d at 697. In addition, Sunrise argues that the UCC-1 Financing statement indicates MegsInet knew it was dealing with a Minnesota corporation. While the UCC-1 Financing Statement does indicate Sunrise's Minnesota address, the UCC-1 was filed

with the Missouri Secretary of State so as to afford Sunrise the right to bring a replevin action in Missouri should MegsInet default on it obligations. Thus, Sunrise's reliance on this fact is misplaced because this factor shows that MegsInet purposefully availed itself of Missouri law, rather than Minnesota law.

On the other hand, MegsInet alleges the Court must distinguish between nonresident buyers and nonresident sellers when deciding to exercise personal jurisdiction, and in doing so, the Court must focus on the minimum contacts with Minnesota. MegsInet, in its reply memorandum, sets forth twelve "undisputed facts" which it claims clearly demonstrates its "tenuous" contacts with the State of Minnesota.

Based on the information provided from both parties, MegsInet had reason to know it was dealing with a Minnesota corporation. However, MegsInet's initial contact with Minnesota was its inquiry to Sunrise via telephone. Furthermore, all subsequent correspondence was via telephone, fax or mail. Moreover, MegsInet's contacts with regards to this transaction encompassed at least three states, i.e. Minnesota, Massachusetts and California. Thus, under Sunrise's argument, it could bring suit against MegsInet in any of these three states. Meanwhile, MegsInet's contacts, arguably, have not established a substantial connection with Minnesota.

Additionally, it is doubtful that MegsInet intended to subject itself to the jurisdiction of Minnesota courts because of the choice of law clause in the Master Lease. While a choice of law provision in itself is insufficient to create personal jurisdiction, it remains a relevant consideration in determining whether a defendant has purposefully availed itself in the forum state. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1434 (8th Cir.

1995). The Master Lease's choice of law clause calls for all disputes to be governed by California law. Since no forum selection clause exists in the Master Lease, this Court concludes that both parties' intent was to subject themselves to California law in a California court.

***4. Minnesota's Interest in Providing a Forum & 5. Convenience of the Parties***

These factors are of secondary importance, as previously stated. More importantly, these factors cannot alone support a finding of the minimum contacts necessary to support an exercise of jurisdiction. Scullin Steel Co. v. Nat'l Railway Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982). As such, Sunrise's argument in favor of personal jurisdiction must fail because Sunrise failed to establish personal jurisdiction under the above three factors.

The Court notes, however, that Minnesota does have an interest in providing a forum for its residents who have allegedly been wronged. Dent-Air, 332 N.W.2d at 908 (citing Baumann, 249 N.W.2d at 186). Notwithstanding, this Court must be presented with some unique or particularized facts to demonstrate that Minnesota's interest in providing a forum for its residents rests on more than the resident party's interest in having the case decided in its home state. Consequently, when nature and quality of contacts are insufficient to support personal jurisdiction, that factor far outweighs Minnesota's limited interest in providing a forum. Dent-Air, 332 N.W.2d at 908-909.

Likewise, the Court finds no particularized justification for concluding the overall convenience of parties weighs decidedly in favor of the exercise of jurisdiction by Minnesota courts in this instance.

**RECOMMENDATION**

Based upon the foregoing discussion and conclusions, the Magistrate Judge **recommends** that MegsInet's motion to dismiss for lack of personal jurisdiction be **granted**.

Dated: 3/16/02

Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before April 1, 2002.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.